## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BOTANIC TONICS, LLC,

     Plaintiff,

                                     CASE NO. 8:23-cv-01134-SDM-SPF

vs.

WESTMAN PRODUCTS, LLC,

     Defendant.

_____/

### DEFENDANT'S MOTION TO DISMISS COUNTS IV AND V OF THE SECOND AMENDED COMPLAINT WITH INCORPORATED MEMORANDUM OF LAW IN SUPPORT

Defendant, Westman Products, LLC ("Defendant"), by and through undersigned counsel, hereby files its Motion to Dismiss Counts IV and V of Plaintiff Botanic Tonics, LLC's ("Plaintiff") Second Amended Complaint ("SAC") [DE 37], and submits the following memorandum of law in support.

### I.   CONCISE STATEMENT OF THE PRECISE RELIEF REQUESTED, AND THE BASIS FOR THE REQUEST.

Pursuant to Middle District of Florida Local Rule 3.01(a), Defendant respectfully requests that the Court enter an order dismissing Counts IV and V of the Second Amended Complaint [DE 37], and granting such other and further relief as is just and proper. As the basis for this request, Defendant submits that Count IV of the SAC for federal false advertising should be dismissed because Plaintiff has failed to sufficiently allege at least four of the five elements needed to assert this claim. Additionally, Count V of Plaintiff's SAC for Violation of Florida's Deceptive and

Unfair Trade Practices Act ("FDUPTA") (Fla. Stat. §501.201 *et seq.*) should be dismissed because: **(1)** Plaintiff is not a "consumer" under the statute, and therefore lacks standing to sue; and **(2)** Plaintiff failed to allege the *prima facie* element of "actual damages," and similarly failed to plead any sufficient ultimate facts in support.

As part of the dismissal order, Defendant also respectfully requests, pursuant to well-founded case law, that the Court extend the time to answer Plaintiff's three remaining causes of action (Counts I-III) in the SAC.[1]

## MEMORANDUM OF LAW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. This admonition is particularly important here because the allegations set forth in Plaintiff's SAC requires the Court to abandon both.

---

[1] *See Jacques v. First Liberty Ins. Corp.,* No. 8:16-cv-1240-T-23TBM, 2016 U.S. Dist. LEXIS 80556, at *2 (M.D. Fla. June 9, 2016) ("The majority of courts considering this question have concluded that a party need not file an answer while a partial motion to dismiss is pending."); *Taylor v. Pekerol*, 2016 U.S. Dist. LEXIS 187202, at *3 (N.D. Fla. Mar. 10, 2016) ("Multiple courts, including this Court, have held that a party need not file an answer as to the unchallenged claims while a partial motion to dismiss the challenged claims is pending").

It is not sufficient for a complaint to "plead[] facts that are 'merely consistent with' a defendant's liability." *Id.* Further, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (*quoting Twombly*, 550 U.S. at 557). Rather, "[a] claim has facial plausibility when plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

## I. <u>COUNT IV SHOULD BE DISMISSED UNDER RULE 12(b)(6).</u>

### A. <u>Count IV Should Be Dismissed Because Plaintiff Lacks Statutory Standing</u>.[2]

"In order to assert a false advertising claim, Plaintiff must have standing both under Article III and the Lanham Act." *Geiger v. C&G of Groton, Inc.*, 424 F. Supp. 3d 276, 291 (D. Conn. 2019). Standing under Article III requires that a federal-court plaintiff "must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561(1992).[3] "Standing under the Lanham Act requires that a plaintiff: **(1)** allege an injury that falls

---

[2] In *CareDx*, the court explained that statutory standing "does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional power to adjudicate the case.'" *CareDx v. Natera*, 2019 U.S. Dist. LEXIS 219451, at *9 (D. Del. Dec. 20, 2019). "Instead, statutory standing addresses 'whether Congress has accorded a particular plaintiff the right to sue under a statute, but it does not limit the power of the court to adjudicate the case.'" *Id.* "As a result, a 'dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim, and a motion to dismiss on this ground is brought pursuant to Rule 12(b)(6), rather than Rule 12(b)(1).'" *Id.*

[3] *See also Broward Amnesty v. Battle*, 559 F.3d 1170 (11th Cir. 2009) (plaintiff must show "an injury in fact, which is concrete and particularized and actual or imminent.").

within the zone of interests protected by the Lanham Act - an injury to a commercial interest in reputation or sales; ***and* (2)** allege that the 'economic or reputational injury flow[s] directly from the deception wrought by the defendant's advertising,' which occurs 'when deception of consumers causes them to withhold trade from the plaintiff.'" *Nespresso USA, Inc. v. Ethical Coffee Co. SA*, 2017 U.S. Dist. LEXIS 109460, at *10 (D. Del. July 14, 2017) (*citing Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1391, 188 L. Ed. 2d 392 (2014). As demonstrated below, the Court should dismiss Count IV as Plaintiff lacks statutory standing under the Lanham Act.

**1. Plaintiff failed to allege a concrete injury falling within the Lanham Act's zone of interests.**

Count IV should be dismissed because the SAC failed to allege any sufficient ultimate facts detailing how Plaintiff suffered an injury falling within the zone of interests protected by the Lanham Act, to wit, "an injury to a commercial interest in reputation or sales." *Lexmark*, 134 S. Ct. at 1391. With respect to reputational harm or lost sales, the SAC merely pays lip service to these components which are required to state a viable claim for false advertising.  More specifically, Count IV is limited to paragraphs 1-52 – which were incorporated by reference – as well as paragraphs 73-79 (collectively, the "Count IV Paragraphs").  Within the Count IV Paragraphs, the only mention of the words "reputation" and/or "lost sales" are found below:

> 36. The likelihood of confusion, mistake, and deception engendered by Defendant's infringement of FEEL FREE and BOTANIC TONICS PLANT SOLUTIONS marks is causing irreparable harm to the goodwill symbolized by the FEEL FREE and BOTANIC TONICS PLANT SOLUTIONS marks and their **reputation** to consumers.

37. By causing a likelihood of confusion, mistake, and deception, Defendant is inflicting irreparable harm on the goodwill symbolized by Botanic Tonics FEEL FREE and BOTANIC TONICS PLANT SOLUTIONS marks and the **reputation** for quality they embody.

78. By virtue of Defendant's conduct, Defendant has willfully violated Section 32 of the Lanham Act, 15 U.S.C. § 1125(a), and Botanic Tonics has suffered and will continue to suffer irreparable damage to its business, **reputation**, and goodwill and has **lost sales** and profits it would have made but for Defendant's willful unfair competition.

These sole allegations are conclusory and entirely speculative in nature. It is well-settled that mere speculative injury cannot form the basis for standing under the Lanham Act.[4] Furthermore, and while the allegations in the SAC must generally be accepted as true at this stage, "in determining the dismissal motion, the Court is neither required nor expected to engage in unfounded speculation as to the existence or non-existence of all possible facts that might allow the complaint to proceed further." *Henry v. Robey-Barber*, 777 F. Supp. 1554, 1555 (M.D. Fla. 1991). As a result, and because the SAC is void of any sufficient ultimate facts demonstrating that Plaintiff suffered "concrete and particularized" injury-in-fact, as opposed to conjectural and hypothetical lost sales, Count IV should be dismissed because Plaintiff failed to carry its burden in demonstrating statutory standing under the Lanham Act.

**2. Plaintiff failed to allege that its injury flowed from the purportedly false advertising.**

---

[4] *See Brave Law Firm, LLC v. Truck Accident Lawyers Grp.*, 2019 U.S. Dist. LEXIS 79275, at *21 (D. Kan. May 10, 2019) (dismissing Lanham Act claim because plaintiff's purported injury was too speculative to satisfy *Lexmark*, and recognizing that "[p]roximate cause requires that the 'alleged harm . . . is [not] 'too remote' from the defendant's unlawful conduct,' and that the 'harm alleged has a sufficiently close connection to the conduct the statute prohibits.'") (internal citation omitted).

Even assuming that Plaintiff's bare-bones assertion as to "reputational" harm or "lost sales" was sufficient – which it is not – Count IV should still be dismissed for lack of standing because there are no allegations showing how Plaintiff's purported economic injury "flows directly from the deception wrought by the defendant's advertising." *Lexmark*, 134 S. Ct. 1377, 1391, 188 L. Ed. 2d 392 (2014).[5]

In *Nespresso USA, Inc. v. Ethical Coffee Co. SA*, 2017 U.S. Dist. LEXIS 109460 (D. Del. July 14, 2017), defendant brought a false advertising counterclaim, predicated on plaintiff's allegedly misleading website. *Id*. at *11. According to ECC, Nespresso's site promoted a study showing that "when it comes to environmental impact, aluminum capsules that are recycled after use are the optimal way to make an espresso coffee in a Nespresso Machine, among all options currently available." *Id*. Based on that purportedly misleading statement, ECC alleged that it "has been and will continue to be injured by, *inter alia*, lost sales, loss of business opportunities, and loss of goodwill among the coffee consuming public." *Id*. at *10-11. In addressing the proximate cause element of the claim, the court found that "[i]n essence, ECC asks the court to create the entire causal chain linking ECC's injuries to consumer confusion based solely on the allegation that Nespresso's website promotes a purportedly misleading study and on Nespresso's recognition that its customers are environmentally conscious." *Id*. The court later emphasized that "there must be some facts in the pleadings that serve as

---

[5] *See also Black Diamond v. Twin Pines*, 707 F. App'x 576 (11th Cir. 2017) (dismissing the Lanham Act claims because plaintiff did "not provide any factual support for how or why such an injury to a commercial interest has or will occur.").

links in the chain of inferences necessary to establish proximate cause under the Lanham Act." *Id*. at *12. Thus, because ECC failed "to plead facts connecting ECC's injuries to Nespresso's allegedly misleading statements about non-Nespresso espresso capsule compatibility with Nespresso machines," the court dismissed the Lanham Act claim. *Id*. at *13.

Count IV at issue fails for the same reason as the claim in *Nespresso*, as there is a complete absence of any causal chain between Defendant's purported "false advertising" on the one hand, and Plaintiff's *sole* allegation of "lost sales" on the other. In sum, such speculative injury cannot form standing under the Lanham Act.[6]

### 3. Additional Bases Require Dismissal of Count IV.

In addition to being dismissed for lack of statutory standing, Count IV should be dismissed for failure to state a claim under Fed.R.Civ.P. 12(b)(6). Section 43 of the Lanham Act "does not have boundless application as a remedy for unfair trade practices." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003). "Because of its inherently limited wording, § 43(a) can never be a federal 'codification' of the overall law of 'unfair competition'...but can apply only to certain unfair trade practices prohibited by its text." *Id.*

a. The Alleged Statements Were Not "Broadly" and "Publicly" Disseminated.

---

[6] *See Brave Law Firm, LLC v. Truck Accident Lawyers Grp.*, 2019 U.S. Dist. LEXIS 79275, at *21 (D. Kan. May 10, 2019) (dismissing Lanham Act claim because plaintiff's purported injury was too speculative to satisfy *Lexmark*, and recognizing that "[p]roximate cause requires that the 'alleged harm . . . is [not] 'too remote' from the defendant's unlawful conduct,' and that the 'harm alleged has a sufficiently close connection to the conduct the statute prohibits.'") (internal citation omitted).

At the outset, and in order for a false advertising claim to even be "actionable under the Lanham Act, the speech at issue must be commercial in nature." *Futuristic Fences v. Illusion Fence*, 558 F. Supp. 2d 1270, 1279 (S.D. Fla. 2008). As an additional requirement, "[w]hile the representations need not be made in a 'classical advertising campaign,' but may consist instead of more informal types of 'promotion,' the representations ***must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry***." *Sourcing Sols. v. Kronos*, 2011 U.S. Dist. LEXIS 166510, at \*7 (S.D. Fla. Jan. 25, 2011) (emphasis added).[7]

In the instant case, the SAC asserts in a conclusory fashion that Defendant made "false or misleading descriptions of fact and false or misleading representations of fact, that in commercial advertising or promotion, misrepresented the characteristics and qualities of Defendant's and Plaintiff's goods and commercial DE 37, ¶73. The only factual support for this inaccurate allegation is a <u>single</u> social media post dated November 5, 2022 from the Instagram account handle @theblissbomb (the "IG Post") (DE No. 37, ¶42). A closer view of the image composing the IG Post is as follows:

---

[7] *See Fashion Boutique v. Fendi*, 314 F.3d 48, 55 (2d Cir. 2002) (plaintiff "failed to prove sufficient dissemination because it presented only a dozen admissible comments within a purchasing public universe consisting of thousands of customers."); *Garland v. Ecology Roof,* 895 F. Supp. 274, 276 (D. Kan. 1995) ("advertising and promotion" must be in the context of "broad, public dissemination of information," rather than isolated communication "to a single potential customer"); *Control Sols. v. Oshkosh*, 2011 U.S. Dist. LEXIS 32894 at \*12 (N.D. Ill. Mar. 28, 2011) ("person-to-person contact is not commercial advertising under the Act."); *Burton v. LABEL*, 344 F. Supp. 3d 680, 702 (S.D.N.Y. 2018) ("telling an unspecified number of [] clients that he could offer the 'exact same' product at a reduced rate does not plausibly allege a sufficient market dissemination under the Lanham Act.").



As is evident from the above, the image in the IG Post is of a simple comparative[8] chart graphic that is completely <u>devoid of any specific reference to Plaintiff</u>. DE 37, ¶42. Rather, the image only vaguely mentions "other…companies"—of which there are plenty in the trade—that does not identify Plaintiff whatsoever as a direct or top competitor. *Id*. Moreover, there is evidence that the IG Post only obtained <u>seven "likes"</u> from users, one of which was self-serving from @theblissbomb itself (but conveniently ignored by Plaintiff).

Such an allegation is plainly insufficient to constitute "commercial advertising or promotion" that was broadly and publicly disseminated sufficiently to the relevant

---

[8] A vague suggestion that a product is comparable (as suggested in the IG Post) is not actionable under the Lanham Act. To illustrate this point, and in *Butcher*, the court held that defendant's "statements that its products Looking Good and Powerball are **comparable** in quality to Butcher's Look® and Speedball® are puffery." *Butcher v. Bouthot*, 2001 U.S. Dist. LEXIS 20886, at *2-3 (D. Me. Mar. 16, 2001) (emphasis added). In finding for defendant, the court held that defendant's "statements that its products are 'comparable' to Butcher's [products] are vague and subjective, not specific and measurable, and they are therefore not actionable." *Id*. Unlike in *Butcher*, Defendant does not make any statements that its product is "comparable," "equal" or "equivalent" to "other" companies' products or even Plaintiff's product; rather, Defendant is merely providing an anonymous contrasting visual, which is even more blatantly mere puffery, and is not actionable under the Lanham Act.

purchasing public.  As one district court within the 11th Circuit noted, a plaintiff's mere claim that "a general message is or has been conveyed to unspecified customers, at an unspecified time, in an unspecified manner, and by unspecified persons is insufficient to satisfy the threshold requirement of a Lanham Act claim - that the accused statements were made in 'commercial advertising or promotion.'" *Schütz Container v. Mauser*, 2012 U.S. Dist. LEXIS 44012, at *88-89 (N.D. Ga. Mar. 28, 2012). As Plaintiff failed to identify the parties to whom the alleged false advertisements were made, as well as the alleged breadth of the dissemination, Count IV should be dismissed.[9]

And yet, even if Defendant's purported statements were "broadly" and "publicly" disseminated (which they were not), Count IV should *still* be dismissed for failure to plead the required elements of the claim, as Defendant will address immediately below. *See Hickson v. N. Crossarm*, 357 F.3d 1256, 1260 (11th Cir. 2004) ("a plaintiff must establish that **(1)** the advertisements of the opposing party were false <u>or</u> misleading; **(2)** the advertisements deceived, <u>or</u> had the capacity to deceive, consumers; **(3)** the deception had a material effect on purchasing decisions; **(4)** the misrepresented product or service affects interstate commerce; <u>and</u> **(5)** the movant has been – or is likely to be – injured as a result of the false advertising.") (emphasis added).

     b.  <u>Plaintiff Failed to Allege that Defendant Made any Claims That Were Literally False and Misleading, and the IG Post is Non-Actionable Puffery</u>.

---

[9] *See Minsurg Int'l, Inc. v. Frontier Devices, Inc.*, 2011 U.S. Dist. LEXIS 37962, at *13 (M.D. Fla. Apr. 6, 2011) (dismissing claim because plaintiff "simply fail[ed] to state: (i) to whom the false advertisements were made; and (ii) the alleged breadth of the dissemination.").

In order to sufficiently plead the first element of a false advertising claim, plaintiff must allege that "the challenged advertisement is literally false," *or* alternatively, that "the challenged advertisement is literally true, but misleading.'" *Osmose v. Viance, LLC*, 612 F.3d 1298, 1308 (11th Cir. 2010) (internal citation omitted). Furthermore, even if the challenged advertisement is literally false, or alternatively is true but misleading, the challenged statement cannot be mere puffery because "'puffing' statements are non-actionable under the Lanham Act." *J-B Weld v. Gorilla Glue*, 2018 U.S. Dist. LEXIS 222506, at *42 (N.D. Ga. Oct. 17, 2018).[10]

Here, Plaintiff alleges that Defendant's IG Post contains four "false" claims, but fails to provide even minimal facts to show how those claims are, in fact, false. To the extent that Plaintiff alleges the claims in the IG Post are *also* "misleading" later on in the SAC, (DE 37, ¶73-7) that runs counter to the first *Hickson* factor —"the advertisements of the opposing party [must be] false <u>or</u> misleading." Either a claim is false, or it is true but misleading, but it cannot possibly be both. Nevertheless, Plaintiff impermissibly relies on the same four claims stating all are "false *and* misleading," but neglects to say how some or all those claims are somehow also alternatively true but misleading. Consequently, Plaintiff has failed to state a claim.[11]

---

[10]"Puffing comes in two forms: (1) 'grossly exaggerated advertising claims such as blustering and boasting which no reasonable buyer would believe was true' or (2) 'a general claim of superiority over a comparative product that is so vague and indeterminate that it will be understood as a mere expression of opinion.'" *Id*. (*citing 5 McCarthy on Trademarks and Unfair Competition* § 27:38 (5th ed.).

[11] *See Minsurg v. Frontier*, 2011 U.S. Dist. LEXIS 37962, at *14 (M.D. Fla. Apr. 6, 2011) (dismissing false advertising claim, and noting that although plaintiff "alleges that [defendants] have 'falsely advertised' the statements, it fails to provide even the most minimal of facts to show how the alleged statements are, in fact, false.").

For completeness, Defendant will address each of the four claims Plaintiff relies on, but that fail to give rise to an actionable false advertising claim under the Lanham Act. For ease of reference, Defendant highlights the challenged claims at issue below:

> **¶43 of the SAC**:  This advertisement falsely claims that Bliss Bomb is the only kava and kratom tonic that:
> (a) Contains less than 3mg 7-hydroxymitragynine;
> (b) Tastes good with NO sweeteners;
> (c) No need to shake before consuming; and
> (d) Made in a facility certified by the American Kratom Association.

### i. *Defendant never claims that "Bliss Bomb is the only kava and kratom tonic…".*

As an initial matter, the entire basis for Plaintiff's claim as summarized in the allegation above, and in various allegations made after it,(ECF No. 37, ¶46-48) is inaccurate because the IG Post <u>never</u> states Defendant's product is the "**only** kava and kratom tonic…". Rather, the IG Post merely lists some qualities that Defendant's product offers that *some* "other" companies, in comparison, do or do not also offer. The total number or specific names of those "other" companies are not provided, and Defendant does <u>not</u> otherwise claim to compare its product to those of "all" other companies. Therefore, there could be "other" companies that have products that contain similar qualities to Bliss Bomb that Defendant is simply *not* comparing itself to, such as Plaintiff. It cannot be presumed that Defendant is claiming to be the "only" product with those qualities, just as it cannot not be presumed that Plaintiff is one of the "other" companies. To the extent Plaintiff alleges Defendant is claiming to be the "only" product with the qualities identified above, that is merely a blatant deception to attempt to bolster Plaintiff's weak claim.

It is well-settled that advertisements which "are inherently immeasurable" constitute non-actionable puffery.[12] Therefore, the IG Post Plaintiff relies on only ambiguously referring to "other kratom kava tonic companies" and "other kratom shot companies" cannot serve as a basis to save Count IV from dismissal. Indeed, and in addition to the fact that Plaintiff failed to allege how these claims are false, or alternatively true but misleading, Plaintiff once again omitted the most pertinent fact: <u>Plaintiff is never mentioned by name, image, or otherwise in the IG Post</u>.[13] Had the SAC conceded that the IG Post never identifies Plaintiff, Plaintiff would have been forced to admit that the IG Post does not apply to Plaintiff (despite Plaintiff's insinuation to the contrary). Rather, the IG Post may apply to "other" companies that are unrelated to Plaintiff, which upholds the IG Post's accuracy. Thus, Count IV fails because the language in the IG Post controls and negates Plaintiff's claim premised upon a false and misleading advertisement.[14]

      ii. ___Plaintiff never alleges how Defendant's claim that Bliss Bomb "tastes good with NO sweeteners" is false.___

Although Plaintiff alleges that *each* of Defendant's claims in the IG Post is "false and misleading." *See* DE 37, ¶74. Plaintiff does <u>not</u> allege how Defendant's claim that its product "tastes good with NO sweeteners" is somehow false. DE 37, ¶43. Perhaps Plaintiff neglects to specifically address this claim is because it agrees that the "taste"

---

[12]*Browe v. Evenflo Co.*, 2015 U.S. Dist. LEXIS 82540, at *13 (D. Minn. June 25, 2015).

[13]*See Osmose*, 612 F.3d at 1308 (courts "must view the face of the statement in its entirety.").

[14]*See Griffin v. Irvin*, 496 F.3d 1189, 1205-6 (11th Cir. 2007) ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations . . . when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.").

of a product is a non-actionable statement of opinion,[15] and Defendant's product does not, in truth, include sweeteners. Plaintiff's failure to provide allegations regarding this specific claim suggests, at a minimum, Plaintiff is conceding Defendant's IG Post is not *entirely* false or even misleading that. At the very least, this claim is insufficient to support Plaintiff's allegation of false advertising.

### iii. Defendant does NOT claim that "its product is the only kava and kratom product that contains less than 3 mg of 7-hydroxymitragynine."

By purposefully generally stating only "other" companies, there is nothing "false" or even "misleading" about Defendant stating it contains less than 3 mg of 7-hydroxymitragynine whereas "other" companies do not contain less than that amount. There are "other" companies with products on the market (besides Plaintiff and its Feel Free product) that do not contain less than 3 mg of 7-hydroxymitragynine. Those are the very companies that Defendant is comparing itself to in the IG Post, not Plaintiff. If Defendant is not identifying Plaintiff, it cannot be literally false. Thus, this claim is also insufficient to support Plaintiff's false advertising allegations.  DE 37, ¶46.

### iv. Defendant does NOT claim that "Bliss Bomb is the only kava and kratom tonic that consumers [do] not need to shake before consuming."

Although Defendant's Bliss Bomb product does contain the common phrase "SHAKE WELL BEFORE USE," that phrase does not suggest a *necessity* to shake the product before consuming it. If it were a necessity to shake the product, that phrase would presumably appear under the "Directions" portion of the label, which it does

---

[15] The Lanham Act regulates only representations of fact — statements that are "capable of being proven false." *Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F. Supp. 2d 1335, 1357 (S.D. Fla. 2002).

not. Nevertheless, Bliss Bomb does not, in fact, *need* to be shaken before consuming. Aside from that truth, it begs repeating that Defendant never uses the adjective "only" to refer to Bliss Bomb in the subject IG Post, even though Plaintiff incorrectly uses that adjective throughout the SAC. Accordingly, Plaintiff's statement that this particular claim is false must be flatly rejected. *See* DE 37, ¶47. To the extent that Plaintiff argues that this claim is true but misleading, Plaintiff has not alleged that any consumers were *actually* deceived, as explained later in this Motion to Dismiss.

### v. *Defendant does NOT claim that "Bliss Bomb [is] the only product that is made in a facility certified by the American Kratom Association."*

Once again, Plaintiff misrepresents Defendant's IG Post by stating that Defendant claims it is the "only" product that is made in a facility certified by the American Kratom Association. That is not a complete portrayal of the IG Post. Besides the fact that Defendant does not use the adjective "only" in this claim—or any other claim for that matter—Defendant includes the following informational text at the bottom of the IG Post image in bold lettering:

> **The American Kratom Association is the only regulation for kratom in the US and has certified less than 30 companies based on rigorous testing, safety, and cleanliness standards.**

This text demonstrates that Defendant is admitting to consumers that there are several "other" companies—even besides Plaintiff—that market kava and kratom products made in a facility certified by the American Kratom Association. Accordingly, Plaintiff's argument in this regard is nullified, and this claim is clearly not supportive of Plaintiff's allegation of false advertising.

To the extent that Plaintiff alleges "Bliss Bomb is not a manufacturer verified by the American Kratom Association," the foundation for this assertion is entirely based "on **information and belief**." DE 37, ¶49, 75 (emphasis added). Because there are no factual predicates for this assertion, Plaintiff's foundation crumbles, and this Court should adhere to its own precedent by rejecting Plaintiff's "upon information and belief" allegations.[16] Therefore, the Court should <u>not</u> consider Plaintiff's assertions concerning this portion of the claim either.

c. <u>Plaintiff Failed to Allege That the Purported "Misleading" IG Post Deceived Consumers</u>.

To meet the second element of a false advertising claim, a plaintiff must allege that "the advertisements actually deceived customers or had the tendency to deceive a substantial portion of the targeted audience." *Third Party Verification v. Signaturelink*, 492 F. Supp. 2d 1314, 1324 (M.D. Fla. 2007). When a complaint lacks any allegations of consumer confusion, a plaintiff lacks standing under the Lanham Act.[17]

In the SAC, Plaintiff improperly alleges that the claims in Defendant's IG Post are false, *but also* misleading. When "an advertisement is not literally false, then the plaintiff must demonstrate that consumers were actually deceived." *Intertape Polymer*

---

[16] *See Howmedica Osteonics Corp. v. Alphatec Spine, Inc.*, 2022 U.S. Dist. LEXIS 122945, 2022 WL 3136837, *27 (M.D. Fla. Jun. 17, 2022) ("[w]hen deciding a motion to dismiss a court need not accept as true an allegation made on information and belief if the factual allegations are insufficient to make the statement plausible."); *Scott v. Experian Info. Sols., Inc.*, No. 18-CV-60178-ALTONAGA, 2018 U.S. Dist. LEXIS 110210, at *15 (S.D. Fla. June 29, 2018) (agreeing with defendant's argument and granting motion to dismiss because "'[c]onclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard.'") (internal citation omitted).

[17] *See Alphamed v. Arriva Pharm., Inc.*, 391 F. Supp. 2d 1148, 1163 (S.D. Fla. 2005) ("because no allegation of *consumer* confusion has been made…AlphaMed has no standing to sue under the Lanham Act's false advertising provision.") (emphasis in original).

*Corp. v. Inspired Techs., Inc.*, 725 F. Supp. 2d 1319, 1333 (M.D. Fla. 2010).[18] Here, in Count IV, Plaintiff alleges "Defendant's false *and* misleading Instagram post has deceived, or has the capacity to deceive, consumers." DE 37, ¶74-75 (emphasis added). However, since Count IV is based, in part, on the "misleading" IG Post, Plaintiff is required (but failed) to allege that any consumers were *actually* deceived.

Running parallel, Defendant notes that "'[w]hen the alleged representation is not an overt false statement, but merely misleading in context, the evidentiary showing required to sustain a Lanham claim is higher' and 'proof that the advertising actually conveyed the implied message and thereby deceived a significant portion of the recipients becomes critical.'" *Genus v. Lannett Co.*, 378 F. Supp. 3d 823, 833 (N.D. Cal. 2019). Although at the motion to dismiss phase, Plaintiff is not required to offer "proof" that Defendant's advertising actually conveyed the implied message and deceived a significant portion of the intended recipients, Plaintiff is at least required *to allege* such mass deception. Count IV fails in this regard, and should be dismissed.

d.  <u>Plaintiff Did Not Allege that the IG Post Affected any Purchasing Decisions</u>.

In order to meet the third element of a claim for false advertising, a plaintiff must "establish that 'the defendant's deception is **likely to influence** the purchasing decision.' The materiality requirement is based on the premise that not all deceptions affect consumer decisions." *N. Am. Med. Corp. v. Axiom Worldwide*, 522 F.3d 1211, 1226

---

[18]*See also Ameritox, Ltd. v. Millennium Labs., Inc.*, 889 F. Supp. 2d 1304, 1316 (M.D. Fla. 2012) ("Allegations of literally false representations do not require supporting evidence of consumer deception, but allegations of misleading advertisements do.") (emphasis added).

(11th Cir. 2008))(emphasis added).[19] Plaintiff boldly alleges that "Defendant's false and misleading statements have a *material effect* on customer purchasing decisions...," but does not say *how* the IG Post— "liked" by a mere seven users—effected any consumer purchasing decisions or how the effect was *material*. ECF No. 37, ¶76 (emphasis added). A bare-bones allegation will not do. Indeed, and rather than alleging sufficient ultimate facts in support of the claim, Plaintiff parrots the language of the governing statute[20], which cannot defeat the instant Motion to Dismiss.[21] Because the SAC does not allege how Defendant's IG Post had a material effect on any consumer's purchasing decisions, Count IV should be dismissed.

  e.  <u>Plaintiff Failed to Allege Injury from "Declining Sales or Loss of Goodwill."</u>

  In order to meet the fifth element of a false advertising claim, a plaintiff must allege that it "has been or is likely to be injured as a result of the false or misleading advertisements *by causally related declining sales* or loss of goodwill." *Tire Kingdom v. Morgan Tire*, 915 F. Supp. 360, 364 (S.D. Fla. 1996) (emphasis added). Based upon a fatal deficiency in Count IV, Plaintiff has failed to plead the fifth element of the claim.

  Specifically, Plaintiff's conclusory assertions that it has suffered "irreparable

---

[19] *See also Ameritox, Ltd. v. Millennium Labs*, 2012 U.S. Dist. LEXIS 1830, at *10 (M.D. Fla. Jan. 6, 2012) ("A false advertising claim under the Lanham Act *must allege* that 'the deception is material, meaning it is **likely to influence** purchasing decisions.'") (internal citation omitted) (emphasis added).
[20] The governing statute creates liability when a defendant engages in a "false or misleading representation of fact which in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B).
[21] *See Sterling v. Infinite*, 2011 U.S. Dist. LEXIS 169005, at *26-27 (S.D. Fla. Mar. 3, 2011) ("entirely conclusory language, which parrots the statutory language, is insufficient" to state a claim for relief).

damage to its…goodwill" and it has "lost sales and profits" are far too remote.[22] In essence, Count IV amounts to a speculative "if this, then that" iteration of Plaintiff's alleged injury, and stretches to suggest that "*if* a customer viewed Defendant's IG Post…*then* Plaintiff must have lost a sale." Such a theory fails to meet the concrete injury requirement of a false advertising claim.[23]

## II. COUNT V OF THE SAC SHOULD BE DISMISSED PURSUANT TO FED.R.CIV.P. 12(b)(6).

### A. Plaintiff Lacks Standing, and Cannot State a Claim for a Violation of the Florida Deceptive and Unfair Trade Practices Act.

1. Plaintiff is Not a "Consumer" Entitled to Protection Under FDUTPA.

"The FDUTPA is a consumer protection statute proscribing 'unfair methods of competition, unconscionable acts or practices, and unfair or deceptive trade or commerce.'" *Taft v. Dade Cty. Bar Ass'n*, 2015 U.S. Dist. LEXIS 134798, at *7 (S.D. Fla. Oct. 2, 2015) (citing *Fla. Stat.* § 501.204(1)). "It authorizes a private cause of action for actual damages by any 'person' who has suffered a loss as a result of a violation of the statute." *Id*. (citing *Fla. Stat.* § 501.211(2).

Although the Florida Legislature amended the FDUTPA's standing provision in 2001 by replacing the word 'consumer' with the word 'person," many courts have

---

[22] *See Ahmed v. Hosting.Com*, 28 F. Supp. 3d 82, 91 (D. Mass. 2014) (proximate cause requires that the "'alleged harm…is [not] 'too remote' from defendant's unlawful conduct,' and that the 'harm alleged has a sufficiently close connection to the conduct the statute prohibits.'").

[23] *See Cole v. Zucker*, 2019 U.S. Dist. LEXIS 31714, at *23 (N.D.N.Y. Feb. 28, 2019) ("potential injuries Plaintiffs allege also amount to various iterations of 'if this…then that' and are simply too speculative.").

adopted "a narrow reading of the statute and extend FDUTPA protection only to persons who are deceived when buying or selling goods and services." *Id.*[24]

In *Taft v. Dade Cty. Bar Ass'n*, 2015 U.S. Dist. LEXIS 134798 (S.D. Fla. Oct. 2, 2015), the Court held that based on "***the overwhelming weight of authority*** in favor of a narrow reading, this Court holds that 'person' in section 501.211(2) means only 'consumers,' including businesses that are consumers, and the ***FDUTPA applies only to a consumer injured by an unfair or deceptive act when buying or purchasing goods and services.***" *Id.* at *9 (emphasis added); *Gibson v. Resort*, 2017 U.S. Dist. LEXIS 125980, at *14 (M.D. Fla. Aug. 9, 2017) ("***the majority of district courts which have addressed the issue overwhelmingly have favored the narrow interpretation*** of the term 'person' in section 501.211(2) to mean only 'consumers' injured by an unfair or deceptive act when buying or purchasing goods and services.") (emphasis added).

Here, Plaintiff has not and cannot allege that it is a "consumer" entitled to protection under FDUTPA.  More specifically, Plaintiff failed to allege that it was engaged in any consumer transaction with Defendant involving the purchase of a good

---

[24] *See also Leon v. Tapas & Tintos, Inc.*, 51 F. Supp. 3d 1290, 1297 (S.D. Fla. 2014) (where the Court first defined a "consumer" as "one who has engaged in the purchase of goods or services," and later held that plaintiff "cannot be said to be a 'consumer,' as he has not, nor has he alleged to have, engaged in any consumer transaction, and thus has no standing to bring a claim for violation of FDUTPA."); *Raimbeault v. Accurate Mach. & Tool, LLC*, No. 14-CIV-20136 (S.D. Fla. Oct. 2, 2014) (dismissing FDUTPA claim because plaintiff "at no time acted as a 'purchaser' of any goods or services and as such, is not protected by a consumer protection statute such as FDUTPA."); *Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1342 (S.D. Fla. 2009) (dismissing FDUTPA claim and holding that plaintiff lacked standing as she was not injured in a market transaction between the parties").

or service; as a result, Plaintiff lacks standing to assert a claim under this statute, and Count V should be dismissed *with prejudice*.[25]

 2. <u>The Legal Authorities That Plaintiff Will Rely Upon in its Opposition are Outdated and Otherwise Unavailing</u>.

 In attempting to rebut Defendant's arguments and controlling legal authorities identified above, Defendant expects that Plaintiff will recycle the same assertions and case law made in its prior opposition DE 31.  In attempting to save its FDUTPA claim from certain dismissal, Plaintiff previously submitted the following proposition:

> Defendant overlooks this clear statutory framework and maintains that the injury at issue in a FDUTPA claim must result from a consumer transaction, i.e. "the consumer transaction requirement." (ECF 29 at 7-8). However, Florida courts have routinely held that competing business have standing under FDUTPA and have rejected Defendant's outdated consumer transaction requirement: "Florida's intermediate courts have also rejected the consumer transaction requirement. They have allowed businesses to sue other business entities for unfair and deceptive acts committed in a commercial, non-consumer context." *See id*. (citing *Bailey v. St. Louis*, 196 So. 3d 375, 383 (Fla. 2d DCA 2016) and *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015)). DE 31, p. 10.

Plaintiff's argument fails to comprehend that ***the opposite is true***.  Furthermore, the cases relied upon by Plaintiff are widely inapplicable and outdated.  Specifically, as noted by the Middle District of Florida in *Gibson* from a ***2017*** opinion (which ***post-dates*** the 2015 and 2016 state court opinions in *Bailey* and *Carribean* cited above by Plaintiff), "the majority of district courts which have addressed the issue overwhelmingly have favored the narrow interpretation of the term 'person' in section 501.211(2) to mean

---

[25] *See Taft v. Dade Cty. Bar Ass'n*, 2015 U.S. Dist. LEXIS 134798, at \*12 (S.D. Fla. Oct. 2, 2015) ("Taft has failed to establish that she is a 'consumer' under the FDUTPA," and "[b]ased on the allegations in the Verified Complaint, Taft is not a 'consumer,' as she has not engaged in any consumer transaction involving the purchase of goods or services…[s]he therefore lacks standing.").

only 'consumers' injured by an unfair or deceptive act when buying or purchasing goods and services." *Gibson v. Resort*, 2017 U.S. Dist. LEXIS 125980, at *14 (M.D. Fla. Aug. 9, 2017) (emphasis added). Applying *Gibson*, Plaintiff therefore lacks standing because it was not injured when buying goods or services.

Notably, even the opinions from *Caribbean* and *CMR Constr. & Roofing, LLC v. UCMS, LLC*, 2022 U.S. App. LEXIS 21039 (11th Cir. July 29, 2022) – both cited by Plaintiff – demonstrate that Count V of the SAC is subject to dismissal.  In both cases, the courts recognized that a "claimant would have to prove that *there was an injury or detriment to consumers*" in order to have standing. *Caribbean Cruise*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015) (emphasis in original); *see also CMR Constr. & Roofing, LLC*, 2022 U.S. App. LEXIS 21039, at *9 (11th Cir. July 29, 2022).   And in terms of what constitutes "injury or detriment to consumers," the opinion from *CEMEX v. Armstrong*, 2018 U.S. Dist. LEXIS 24920 (M.D. Fla. Feb. 15, 2018) crystalizes the issue.   In *CEMEX*, the court noted that "Armstrong must allege consumer injury for its FDUTPA claim to survive dismissal," and Armstrong contended that it had "alleged harm to consumers. In particular, Armstrong cite[d] to its allegations indicating that the CEMEX scheme, which allowed Metro to hold itself out as an authorized Armstrong distributor, ultimately deceived, confused, and misled consumers." *Id*. at *47-48.  The court disagreed, and in dismissing plaintiff's FDUTPA claim, held:

> [W]hile Armstrong argues that injury to consumers may have occurred, it does not allege any facts supporting a plausible inference *that any consumers have or are likely to have suffered damages. At most, Armstrong alleges that consumers were misled to believe that Metro was an authorized distributor. But Armstrong's allegations do not suggest the consumers received any product other*

*than a true Armstrong Ceiling Product or that the consumer suffered any harm*
*by virtue of having purchased Armstrong Ceiling Products from a non-authorized*
*distributor.* *Id*. at \*47-49 (emphasis added).

Here, Plaintiff alleges ***exactly*** what Armstrong alleged in *Cemex*, namely, that
Defendant's actions "would mislead and deceive consumers into believing that
Defendant's wellness tonics and capsules were produced, authorized, or licensed by
Botanical Tonics, or that the Bliss Blomb products originated from Botanic Tonics."
[DE 37, ¶33]. But just like in *Cemex*, Plaintiff's allegations are predicated upon the
notion that consumers would somehow be misled about Defendant's products, which
is insufficient to show that any consumers have or are like to have suffered damages
or any other detriment. Count V cannot survive Plaintiff's Rule 12(b)(6) attack, and
therefore the FDUTPA claim should be dismissed.

## B. The SAC Failed to Allege Any Sufficient Ultimate Facts That Plaintiff Suffered "Actual Damages."

"A claim for damages under FDUTPA has three elements: (1) a deceptive act
or unfair practice; (2) causation; and (3) actual damages." *Kertesz v. Net Transactions,
Ltd.*, 635 F. Supp. 2d 1339, 1348 (S.D. Fla. 2009). "Florida courts consider actual
damages, the third element of a FDUTPA claim, to be a 'term of art,' defined by 'the
difference in the market value of the product or service in the condition in which it was
delivered and its market value in the condition in which it should have been
delivered.'" *Diversified Mgmt. Sols. v. Control Sys. Research*, 2016 U.S. Dist. LEXIS
189771, at \*12 (S.D. Fla. May 13, 2016). Significantly, "FDUTPA 'actual damages'
do not include consequential damages." *Id*. Further, ""FDUTPA does not provide for

the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment." *Britt Green Trucking, Inc. v. FedEx Nat'l, LTL, Inc.*, 2014 U.S. Dist. LEXIS 95418, at \*32 (M.D. Fla. July 14, 2014).

Count V is deficient and otherwise futile because Plaintiff alleges entitlement to damages in the form of "loss profits…" [ECF 37, ¶87].  In *Diversified*, the court held that "[l]ost profits are a 'quintessential example' of consequential damages," and are not recoverable. *Diversified v. Control*, 2016 U.S. Dist. LEXIS 189771, at \*12 (S.D. Fla. May 13, 2016).[26] Plaintiff attempts to circumvent this pitfall in Count V by relying on *Global Tech* [DE 31, p. 13], which speculated that "[p]ast lost profits, in turn, ***appear*** to be a proper form of 'actual damages.'" *Glob. Tech v. HiLumz*, 2017 U.S. Dist. LEXIS 20512, at \*25-26 (M.D. Fla. Feb. 14, 2017) (emphasis added).  However, the entire opinion from *Apotex v. Hospira*, 2019 U.S. Dist. LEXIS 136324 (S.D.N.Y. Aug. 13, 2019) addressed this exact issue – *i.e.*, "whether [plaintiff] may recover lost profits as 'actual damages," – and based upon Defendant's research, provides the most comprehensive and reasoned opinion analyzing Florida law on this particular issue. In *Apotex*, the court held that "the prevailing law" in Florida "***clearly weighs against*** the inclusion of lost profits in FDUTPA actual damages." *Id*. at \*5-6 (emphasis added). *Apotex* also specifically discussed, distinguished, and the *Global Tech* opinion relied upon by Plaintiff. *See, e.g. Apotex*, 2019 U.S. Dist. LEXIS 136324, at \*5 (S.D.N.Y.

---

[26] S*ee also Five for Entm't v. Rodriguez*, 877 F. Supp. 2d 1321, 1331 (S.D. Fla. 2012) ("It remains well-settled in Florida that consequential damages in the form of lost profits are not recoverable under FDUTPA."); *QSGI, Inc. v. IBM*, 2012 U.S. Dist. LEXIS 49601, at \*5 (S.D. Fla. 2012) (finding plaintiff's damages of "lost profits" and "lost business" did not state actual damages).

Aug. 13, 2019) (noting that *Global Tech* and other cases "ultimately rel[y] on authorities that do not themselves contain any reasoning" to support the notion that "actual damages" include lost-profits under FDTUPA).[27]

Finally, Count V fails to allege that Plaintiff suffered any "actual damages," measured by the "difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered." *Diversified Mgmt. Sols.*, 2016 U.S. Dist. LEXIS 189771, at *12 (S.D. Fla. May 13, 2016). For this reason as well, Plaintiff's FDUTPA claim should be dismissed. *Id.* (dismissing plaintiff's FDUTPA claim even though the complaint alleged "actual damages," because there were no allegations whatsoever that plaintiff suffered anything other than lost profits and consequential damages which were "not recoverable under FDUTPA.").[28]

## II.  **CONCLUSION**

Based upon the foregoing arguments and legal authorities, Defendant respectfully requests that this Court enter an order: **(1)** dismissing Counts IV and V of the SAC *with prejudice*; **(2)** extending the time for Defendant to answer the remaining Counts I-III of the SAC; and **(3)** granting Defendant such other and further relief as this Court deems just and proper.

---

[27] To the extent Plaintiff responds by arguing that it should at least be entitled to injunctive relief, this argument has no merit because Plaintiff lacks standing under the FDUTPA, as discussed above.

[28] *See also Prunty v. Sibelius*, 2014 U.S. Dist. LEXIS 166261, at *13-14 (M.D. Fla. Nov. 20, 2014) ("Plaintiffs do not plead any actual damages available under FDUTPA that they have individually suffered…[and] [w]hen a plaintiff in her complaint fails to allege a recoverable loss under FDUTPA, the complaint fails to state a cause of action under FDUTPA.").

Dated:  January 5, 2024                    Respectfully submitted,

                                           /s/ Cleo I. Suero
                                           John Cyril Malloy, III
                                           Florida Bar No. 964220
                                           jcmalloy@malloylaw.com
                                           Meredith Frank Mendez
                                           Florida Bar No. 502235
                                           mmendez@malloylaw.com
                                           Jonathan Woodard
                                           Florida Bar. No. 96553
                                           jwoodard@malloylaw.com
                                           Cleo Isabel Suero
                                           Florida Bar No. 1024675
                                           csuero@malloylaw.com
                                           **MALLOY & MALLOY, P.L.**
                                           6751 N. Federal Highway, Suite 300
                                           Boca Raton, Florida 33487
                                           (561) 243 1000
                                           *Counsel for Defendant*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed through the Florida Courts E-Filing Portal on January 5, 2024, and, through Florida Courts E-Filing Portal, was automatically served on the parties as follows: Leon N. Patricios, Esq., Zumpano Patricios, P.A., 312 Minorca Ave., Coral Gables, FL 33134, lpatricios@zplaw.com; Kevin M. Bell, Esq., Matthew D. Zapadka, Esq. and Justin F. Ferraro, Esq., Arnall Golden Gregory LLP, 2100 Pennsylvania Ave. NW, Suite 350S, Washington, DC 20037, kevin.bell@agg.com, matthew.zapadka@agg.com, and justin.ferraro@agg.com, Attorneys for Plaintiff.

                                           /s/ Cleo I. Suero